In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1927

KIMBERLY FLANAGAN,

*Plaintiff-Appellant,*

*v.*

OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT
COURT OF COOK COUNTY, ILLINOIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 8849 — **Joan B. Gottschall**, *Judge.*

ARGUED APRIL 24, 2018 — DECIDED JUNE 15, 2018

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

PER CURIAM. Kimberly Flanagan says that two coworkers threatened her life because she previously had sued their shared employer—the Cook County Adult Probation Department—for discrimination and retaliation. She brought the present action against the Department, asserting retaliation under Title VII, 42 U.S.C. § 2000e-3(a), based on the hostile

work environment engendered by that supposed murder at-
tempt. The district court entered summary judgment for the
defendants. Because the threat to Flanagan was too oblique
for a jury to conclude that she was subjected to severe or per-
vasive harassment, we affirm.

Flanagan is a probation officer with the Cook County
Adult Probation Department, which operates under the Chief
Judge of the Circuit Court of Cook County. She previously
sued the Office of the Chief Judge for discrimination and re-
taliation, and she won at trial in 2007 on her retaliation claim.

While an appeal in that case was pending, a series of
events unfolded that, Flanagan believes, show that two of her
coworkers tried to kill her. As she recounts, late one evening
at the office (the date is unclear), her colleague Cheryl Ander-
son overheard the Department's human-resources director,
Donna Vaughan, tell Flanagan's deputy chief, Phillipe Loi-
zon, something like "I want to bring some bodily harm to Kim
Flanagan." Vaughan instructed Loizon "to figure out a way
to get [Flanagan] alone and away from her partner," and Loi-
zon replied "I'm going to do it." Sometime later, Anderson
told Flanagan, and also wrote down, what she had overheard.

Flanagan provides scant detail, but she believes that the
following events show that Loizon attempted to seclude and
kill her on March 13, 2008. That day Loizon radioed for Flana-
gan to join him and another department supervisor at an
Adult Probation Department facility to question a proba-
tioner regarding a potential tip. After the questioning, Loizon
and the probationer left the facility through the back door.
The other supervisor then locked the front door and escorted
Flanagan toward the back. While near the back door, Flana-
gan overheard Loizon say (to whom is not clear), "Do it to her

when she gets out the door." But nothing further happened, and Flanagan soon left on her own. Flanagan regarded these events as threatening, so she promptly filed a discrimination and retaliation charge with the Equal Employment Opportunity Commission.

That EEOC charge, Flanagan says, prompted Loizon to threaten her. The following month he approached her in the office parking lot, exchanged words with her, and then warned, "I could hit you and nobody would give a fuck." He then walked away. Sometime later, Loizon yelled in the office—and Flanagan believes regarding her—"Oh, here she goes again with a new f'ing charge," and "I'm so sick of everybody. [T]hese fucking lawsuits."

In 2010 Flanagan brought this action against her employer. She asserted claims of retaliation under Title VII based primarily on the events in 2008.

The district judge entered summary judgment for the defendants. Regarding the incident at the probation facility, the judge determined that Vaughan's and Loizon's statements were inadmissible hearsay, and that "hearsay problems prove[d] fatal to Flanagan's claim" because she could not otherwise show a threat on her life. And Loizon's statements in the parking lot, the judge continued, did not rise to the level of retaliatory conduct.

On appeal Flanagan argues that Vaughan's and Loizon's statements are not hearsay and that a jury could find that her coworkers tried to kill her in retaliation for litigating against their employer. As evidence of a murder plot and attempt, she points to Anderson's account that Vaughan instructed Loizon to seclude her and that Loizon agreed to "do it." Flanagan also

highlights Loizon's command outside of the facility to "do it to her when she gets out the door."

We first consider whether the district court properly excluded these statements as hearsay. Commands are not statements submitted for their truth and so are not hearsay. FED. R. EV. 801(a); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017). And statements of a declarant's state of mind (motive, intent, or plan) are not excluded under the hearsay rule. FED. R. EV. 803(3). Therefore, Vaughan's instruction to Loizon to "get her alone," Loizon's statement that he was "going to do it," and Loizon's command to "do it to her" are admissible. But Flanagan's testimony about what her colleague Anderson told her, and Anderson's written account of events, were properly ignored because they suffer from a *double* hearsay problem: they are statements of what Anderson said Vaughan and Loizon had said.

We turn next to the merits. To prove a retaliatory hostile work environment, Flanagan must show that (1) her work environment was both objectively and subjectively offensive; (2) the harassment was in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016). Litigating under Title VII is a protected activity. *See* 42 U.S.C. § 2000e-3(a).

A jury could not find that Flanagan was subjected to a hostile work environment. Flanagan argues that Loizon created a hostile environment when she overheard him say at the probation facility to "Do it to her when she gets out the door." But bearing in mind the circumstances, Loizon's threat is too oblique to be considered severe: it is not clear whom he was asking to do what and to who. *See Smith v. Ne. Ill. Univ.*,

388 F.3d 559, 568 (7th Cir. 2004) (threat posed was not sufficiently severe to support retaliatory hostile work environment). Moreover, Flanagan walked away unharmed twenty to thirty minutes later, casting doubt on whether she ever was in danger at all.

Loizon's parking-lot statements, considered with the earlier events, also do not demonstrate retaliation. Flanagan said that she felt threatened by Loizon's declaration that "[he] could hit [her] and nobody would give a fuck," but this lone comment before he walked away is best characterized as an "empty threat" rather than "a seriously contemplated declaration of an intent to do harm." *See Smith*, 388 F.3d at 568; *see also Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("One threat and raised voices would not rise to the level of a hostile work environment.").

AFFIRMED