**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3813
_____

CHRYSOULA J. KOMIS,

Appellant

v.

SECRETARY OF THE UNITED STATES DEPARTMENT
OF LABOR
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:11-cv-06393)
Honorable Timothy R. Rice, U.S. Magistrate Judge
_____

Argued: October 28, 2015

Before: GREENAWAY, JR., SCIRICA, and ROTH, *Circuit
Judges*.

(Opinion Filed: March 12, 2019)

Mark S. Scheffer **[ARGUED]**
Law Offices of Mark S. Scheffer
P.O. Box 111
Birchrunville, PA 19421

*Counsel for Appellant*

Richard Mentzinger, Jr. **[ARGUED]**
Mark J. Sherer
Office of the United States Attorney
for the Eastern District of Pennsylvania
615 Chestnut Street
Philadelphia, PA 19106

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*

Plaintiff Chrysoula J. Komis, a former federal employee, brought Title VII retaliation and retaliatory hostile work environment claims against the Secretary of Labor. The trial court granted judgment as a matter of law for the Secretary on the discrete retaliation claim, and Komis did not appeal. The retaliatory hostile work environment claim went before a jury, which returned a verdict for the Secretary. Komis appeals that verdict, challenging the jury instructions.

This appeal requires us to decide whether federal employees may bring retaliation claims under Title VII. We conclude they may. We are then asked to consider whether the same standard governs federal- and private- sector retaliation claims, and what standard in particular applies to a federal retaliatory hostile work environment claim in light of the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). We need not resolve these questions, however, because Komis cannot prevail under any potentially applicable standard. Accordingly, any error in the jury instructions was harmless. We will affirm.

## I.

Between June 2003 and September 2008, Komis filed more than sixty Equal Employment Opportunity (EEO) complaints while employed by the Department of Labor's Occupational Safety and Health Administration (OSHA). Allegedly in retaliation for those and other EEO complaints filed a decade earlier,[1] Komis contends her employer created a hostile work environment. Specifically, she alleges (*inter alia*) her supervisors: (1) denied her the ability to work regularly from home; (2) shifted her job duties to include more clerical work; (3) reassigned her to a different position; and (4) failed to promote her to Assistant Regional Administrator, instead selecting attorney Maureen Russo. Komis further alleges (5) once Russo became her immediate supervisor, Russo improperly disciplined her in retaliation for making additional

---

[1] In the 1990s, Komis filed EEO complaints for sex discrimination and for unfair denial of the opportunity to work remotely, all of which were resolved in Equal Employment Opportunity Commission (EEOC) settlements.

3

discrimination claims. The disciplinary actions at issue include a written reprimand, suspension, denial of access to training opportunities, and removal from a particular assignment. We observe that all the hostile acts Komis alleges appear to be discrete personnel actions altering the terms and conditions of her employment.

In August 2008, Komis was issued a notice of proposed removal, informing her of OSHA's decision to terminate her employment and providing her an opportunity to respond. Komis left OSHA in September 2008 and filed the last of her EEO complaints, alleging constructive discharge.

In October 2008, Komis sued the Secretary of Labor, alleging OSHA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a). She brought two claims: (1) a retaliation claim based on her nonselection for promotion; and (2) a retaliatory hostile work environment claim. By consent, the matter was tried before a Magistrate Judge. As noted, at the close of Komis's case, the trial judge granted the Secretary judgment as a matter of law on Komis's discrete retaliation claim. Komis did not appeal that judgment. The retaliatory hostile work environment claim proceeded to the jury, which returned a verdict in the Secretary's favor. Komis now challenges the jury charge on appeal.[2]

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). We have jurisdiction under 28 U.S.C. § 1291. "[O]ur review is plenary when the issue is whether the instructions misstated the law." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 245 (3d Cir. 2006).

4

## II.

The parties dispute whether the Supreme Court's decision in *Burlington Northern v. White*, 548 U.S. 53 (2006), renders the trial court's federal-sector retaliatory hostile work environment charge erroneous, and we must ultimately decide whether the alleged error was harmless. Before addressing those questions, we first review Title VII's framework for discrimination and retaliation claims in the private and federal sectors.

The "core antidiscrimination provision" of Title VII of the Civil Rights Act of 1964, *id.* at 61, provides that in the private sector, "[i]t shall be an unlawful employment practice for an employer":

> to fail or refuse to hire or to discharge any individual, or otherwise to *discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C. § 2000e-2(a)(1) (emphasis added). To state a claim for relief under Title VII's antidiscrimination provision, plaintiffs must show "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). "That definition stems from the language of Title VII itself." *Storey*, 390 F.3d at 764. "[A]lthough the statute

5

mentions specific employment decisions with immediate consequences, the scope of the prohibition 'is not limited to 'economic' or 'tangible' discrimination,' . . . and . . . it covers more than '"terms" and "conditions" in the narrow contractual sense.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993), and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–16 (2002).

Title VII's private sector provisions also bar retaliation. While a discrimination claim under Title VII alleges discrimination on the basis of one's race, color, religion, sex, or national origin, a retaliation claim alleges discrimination on the basis of protected conduct:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). Unlike the antidiscrimination provision, the antiretaliation provision is not limited to employer action that affects the terms and conditions of a claimant's employment. As the Supreme Court explained in *Burlington Northern*, "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the

workplace." 548 U.S. at 63. To make out a claim of retaliation, a private-sector plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citations omitted).

Under both the private-sector discrimination and retaliation provisions, §§ 2000e-2(a) and 2000e-3(a), employees may bring claims of a hostile work environment. Discussing a discriminatory hostile work environment, the Supreme Court has explained "[w]orkplace conduct is not measured in isolation," so when a workplace "is permeated with discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Morgan*, 536 U.S. at 116 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001), and *Harris*, 510 U.S. at 21 (internal quotation marks omitted)). We held in *Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006), decided before *Burlington Northern*, "our usual [discriminatory] hostile work environment framework applies equally" to claims of retaliatory hostile work environments. *Id.* at 449. That framework requires a plaintiff prove:

> (1) [S]he suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.

7

*Id.* (internal citations omitted). The inquiry into whether the discriminatory or retaliatory environment was "severe or pervasive" recognizes that less severe isolated incidents which would not themselves rise to the level of retaliation may, when taken together as part of "the overall scenario," evidence retaliatory animus, and one severe incident may be enough to create a hostile work environment. *Id.* at 450 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990)); *see Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

In 1972, Congress extended Title VII's protections to federal employees in § 2000e-16(a), which provides:

> All personnel actions affecting [federal] employees or applicants for [federal] employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, sec. 11, § 717(a), 86 Stat. 103, 111 (codified as amended at 42 U.S.C. § 2000e-16(a)). "In general, it may be said that the substantive anti-discrimination law embraced in Title VII was carried over and applied to the Federal Government." *Morton v. Mancari*, 417 U.S. 535, 547 (1974) (citing H.R. Rep. No. 92-238, at 22 (1971), *as reprinted in* 1972 U.S.C.C.A.N. 2137, 2157). "Congress intended to provide federal employees with the full rights available in the courts as are granted to individuals in the private sector under Title VII." *Loeffler v. Frank*, 486 U.S. 549, 559 (1988) (internal quotation marks and citations omitted).

**III.**

Below, we first clarify that federal employees may bring claims for retaliation under Title VII even though the federal-sector provision does not explicitly reference retaliation. While the government then asserts federal-sector retaliation claims are, unlike their private-sector counterparts, limited to challenging "personnel actions," we conclude this case does not give occasion to address that contention.

**A.**

The government does not contest and in fact accepts our longstanding view—shared by every circuit to consider the question—that federal employees may bring claims of retaliation under Title VII. *See, e.g.*, *Andreoli v. Gates*, 482 F.3d 641, 649–50 (3d Cir. 2007); *Jensen*, 435 F.3d at 449, *abrogated on other grounds by Burlington N.*, 548 U.S. at 53.[3] Although the language of § 2000e-16(a) differs from the language of the private-sector antidiscrimination and antiretaliation provisions, many courts have consistently interpreted § 2000e-16(a) "to give federal employees the same rights as private employees." *Porter v. Adams*, 639 F.2d 273, 277–78 (5th Cir. 1981); *see also White v. Gen. Servs. Admin.*, 652 F.2d 913, 917 (9th Cir. 1981); *Hackley v. Roudebush*, 520

---

[3] *Accord Blomker v. Jewell*, 831 F.3d 1051, 1054 (8th Cir. 2016); *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011); *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008); *Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006); *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000); *Hale v. Marsh*, 808 F.2d 616, 619 (7th Cir. 1986).

F.2d 108, 142 n.138 (D.C. Cir. 1975); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975) (per curiam).

Were there any doubt that federal employees may bring retaliation claims under Title VII, the Supreme Court's decision in *Gomez-Perez v. Potter*, 553 U.S. 474 (2008), dispels it. In *Gomez-Perez*, the Supreme Court addressed whether the federal-sector provision added in 1974 to the Age Discrimination in Employment Act of 1967 (ADEA) prohibits retaliation by the federal government. *See* 553 U.S. at 487. Significantly, the ADEA was "patterned directly after Title VII's federal-sector discrimination ban," *id.* (internal quotation marks and citation omitted), and the text of the ADEA and Title VII federal-sector provisions is nearly identical. *Compare* ADEA, 29 U.S.C. § 633a(a) ("All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . *shall be made free from any discrimination* based on age." (emphasis added)), *with* Title VII, 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment . . . *shall be made free from any discrimination* based on race, color, religion, sex, or national origin." (emphasis added)).

In *Gomez-Perez*, the government argued § 633a(a) did not encompass retaliation claims because, unlike the ADEA's private-sector provisions, the federal-sector provision does not specifically reference retaliation. *See* 553 U.S. at 486. That omission, the government contended, demonstrated Congress intended to prohibit only discrimination claims—not retaliation claims—in the federal sector. *See id.* The Supreme Court rejected the government's narrow reading, instead concluding the federal-sector provision confers on federal

10

employees the right to bring retaliation claims. *See id.* at 491.[4] Because the text of the ADEA and Title VII federal-sector provisions is nearly identical, *Gomez-Perez* supports our conclusion that Title VII also bars retaliation in the federal sector.

Based on our previous recognition of such claims and the Supreme Court's holding in *Gomez-Perez*, we reaffirm that federal employees may bring retaliation claims under Title VII. Parity between private-sector and federal-sector retaliation claims ensures "[a]ll personnel actions affecting [federal] employees . . . shall be made free from any discrimination," 42 U.S.C. § 2000e-16(a). In continuing to recognize federal-sector retaliation claims following *Gomez-Perez*, we join many of our sister circuits. *See Coleman v. Duke*, 867 F.3d 204, 215 (D.C. Cir. 2017); *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017); *Green v. Donahoe*, 760 F.3d 1135, 1146 (10th Cir. 2014), *vacated on other grounds sub nom. Green v. Brennan*,

---

[4] In construing the ADEA's federal-sector provision, the Court rejected arguments that the provision, as a waiver of sovereign immunity, must be strictly construed in favor of the government and that federal employees do not need the same protection as private employees against retaliation because they benefit from the protections under the Civil Service Reform Act (CSRA). *Gomez-Perez*, 553 U.S. at 489–91; *cf. id.* at 503 (Roberts, C.J., dissenting) ("[T]he view that Congress intended to treat retaliation for age discrimination complaints as a problem to be dealt with primarily through administrative procedures, rather than through the judicial process in the first instance, is confirmed by Congress's passage of the Civil Service Reform Act of 1978 (CSRA), 92 Stat. 1111.").

136 S. Ct. 1769 (2016); *AuBuchon v. Geithner*, 743 F.3d 638, 641–42 (8th Cir. 2014); *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam); *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35–36 (1st Cir. 2010); *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009).

**B.**

The government accepts that federal employees may bring retaliation claims, *see* Appellee's Br. 16, but contends the *Burlington Northern* standard used for private-sector retaliation claims should not apply to retaliation claims in the federal sector. In *Burlington Northern*, the Court observed the text of the private-sector retaliation provision did not, unlike the private-sector discrimination provision, limit retaliation claims "to actions that affect employment or alter the conditions of the workplace." 548 U.S. at 62. It accordingly determined the antiretaliation provision protects plaintiffs from conduct a "reasonable employee would have found . . . materially adverse," employment-related or otherwise. *Id.* at 68. According to the government, that material adversity standard is inapplicable to Komis because Title VII's federal-sector provision protects only against discrimination or retaliation as to "[a]ll personnel actions affecting employees," 42 U.S.C. § 2000e-16(a). Although offering more than one definition of "personnel actions," the government principally urges that we interpret "personnel actions" to mean "changes in the terms and conditions of employment," i.e., the requirement for discrimination claims.[5]   Doing so would

---

[5] In its brief, the government refers to multiple possible definitions of "personnel action," some of which are materially different. *See* Appellee's Br. at 21 (suggesting a personnel

negate for federal employees *Burlington Northern*'s holding "that the antiretaliation provision, unlike the substantive

---

action is an action "relating to the terms, conditions, or privileges of employment"); *id.* (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en banc) (holding "personnel actions" contemplate "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating")); *id.* (citing 5 U.S.C. § 2302(a)(2)(A)(xii) (defining "personnel action" in the civil service context to include any "significant change in duties, responsibilities, or working conditions")).

But in *Page*, the Fourth Circuit drew its definition of a "personnel action" for a *discrimination* claim from the actions covered by § 2000e-2(a). 645 F.2d at 233 ("Disparate treatment theory as it has emerged in application of this and comparable provisions of Title VII, most notably § 703(a)(1), 42 U.S.C. § 2000e-2(a)(1), has consistently focused on the question whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. This is the general level of decision we think contemplated by the term 'personnel actions' in [§ 2000e-16]."). Because *Page* involved discrimination—not retaliation—claims, it is inapposite here.

As to the government's contention that we should adopt the definition of "personnel action" contained in 5 U.S.C. § 2302(a)(2)(A), the text of § 2302(a)(2)(A) explicitly limits that definition to the section, and so we do not believe its reach extends to Title VII's federal-sector provision at 42 U.S.C. § 2000e-16(a).

provision, is not limited to discriminatory actions that affect the terms and conditions of employment," 548 U.S. at 64.

Komis's retaliatory hostile work environment claim does not require us to resolve all the parameters of the phrase "personnel action" in § 2000e-16(a), nor does it raise the question whether discrete retaliation claims that do not involve "personnel actions" are cognizable in the federal sector.[6] As made clear by its plain terms, a retaliatory hostile work environment affects the conditions of the workplace. *See Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). And as noted, all the hostile acts Komis alleges as part of that hostile environment are personnel actions potentially altering the terms and conditions of her employment. To that extent, then, we can recognize that the acts alleged here are personnel actions without deciding in this case whether the "personnel action" language in § 2000e-16(a) might differentiate federal-sector from private-sector retaliation claims.[7]

---

[6] We note the government has unsuccessfully advanced this argument before. *See, e.g.*, *Rochon*, 438 F.3d at 1216–19 ("[W]e must consider whether . . . the general ban on retaliation in § 2000e-3(a) is limited by the requirement in § 2000e-16(a) that '[a]ll [government] personnel actions' be made free from discrimination. We do not believe the prohibition is so qualified."); *see also Hale*, 808 F.2d at 619 (analyzing a federal employee's Title VII retaliation claim without conducting a separate "personnel action" inquiry); *Ayon v. Sampson*, 547 F.2d 446, 449 (9th Cir. 1976) (similar).

[7] The government also raises this argument for the first time on appeal, and our general practice is not to consider arguments

**IV.**

Given the legal background discussed above, Komis's appeal comes down to whether the following jury instructions were erroneous:

> OSHA is liable if Ms. Komis proves all of the following elements by a preponderance of the evidence.
>
> First, Ms. Komis was subjected to retaliation or harassment by her co-workers, supervisors, and/or managers.
>
> . . .
>
> Third, the co-workers['], supervisors['] and/or managers['] conduct was motivated by the fact that Ms. Komis had complained of discrimination or retaliation.
>
> *Fourth, the co-workers['], supervisors['] and managers['] conduct was so severe or pervasive that a reasonable person in Ms. Komis'[s] position would find her work environment hostile or abusive.*
>
> . . .
>
> Sixth, Ms. Komis suffered a materially adverse action as a result of the hostile work environment, meaning a reasonable worker would have been dissuaded from making or

---

the parties failed to raise before the trial court. *See Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994).

15

supporting a charge of discrimination or retaliation.

. . .

A hostile work environment exists under the law only if there is extreme conduct amounting to a material change in the terms and conditions of employment . . . . [I]solated incidents unless extremely serious will not amount to a hostile work environment under law.

App'x 21–24 (emphasis added). The court also listed for the jury several "factors" to "consider when determining and deciding whether the hostile work environment existed," including the "total physical environment" of Komis's workplace, the "frequency of the offensive conduct," the "severity of the conduct," and the "effect of the working environment on Ms. Komis'[s] mental and emotional well-being." App'x 23.

Komis specifically contends the trial court's instruction that a retaliatory hostile work environment claim requires proof of "conduct . . . so severe or pervasive that a reasonable person in Ms. Komis'[s] position would find her work environment hostile or abusive," App'x 22, was erroneous because *Burlington Northern* did away with the "severe or pervasive" requirement for retaliation claims—including for a retaliatory hostile work environment. Instead, she maintains, the jury should have been instructed only on the material adversity standard articulated in the sixth element of the court's instructions.

"When a jury instruction is erroneous, a new trial is warranted unless such error is harmless." *Harvey v. Plains Tp.*

16

*Police Dep't*, 635 F.3d 606, 612 (3d Cir. 2011). In a civil case, an error is harmless if "it is highly probable that the error did not contribute to the judgment." *Id.* (internal quotation marks and citations omitted). Based on the full record, we are confident that in this case "the jury would have reached the same result had it been instructed according to" Komis's desired instruction. *Murray v. United of Omaha Life Ins. Co.*, 145 F.3d 143, 156–57 (3d Cir. 1998).

Komis's claim turns on the difference between the "severe or pervasive" standard and the "materially adverse" standard.[8] As noted, we first applied the "severe or pervasive" standard to retaliatory hostile work environment claims in the private sector under Title VII in *Jensen*, where we explained the relevant inquiry was: "[D]id the plaintiff suffer retaliatory harassment severe or pervasive enough to 'alter the conditions of [her] employment and create an abusive working

---

[8] Komis in fact focuses on the difference between the "materially adverse" standard and a "severe *and* pervasive" standard. Rather than "severe *and* pervasive," however, the correct standard would be "severe *or* pervasive": "'[S]everity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive," *Castleberry*, 863 F.3d at 264 (internal quotation and citation omitted); *see also Jensen*, 435 F.3d at 449 n.3. The trial court therefore appropriately instructed the jury to consider whether Komis faced "severe *or* pervasive" retaliation in the form of a hostile work environment. *See* App'x 22, Supplemental App'x 868 (emphasis added).

environment?'" 453 F.3d at 451 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

The Supreme Court then introduced the "materially adverse" standard in *Burlington Northern*, a case involving a private-sector claim of retaliation (but not raising any claim of a retaliatory hostile work environment). That decision laid out the difference in "scope" of discrimination and retaliation claims. 548 U.S. at 67. The Court reasoned that "[t]he [antidiscrimination] provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." *Id.* at 63. Because "one cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace," the "antiretaliation provision, unlike the substantive [antidiscrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 63–64. The Court accordingly held a plaintiff who asserts a discrete retaliation claim need show only "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citations omitted). We have applied *Burlington Northern*'s standard to discrete retaliation claims in the private sector, *see Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d. Cir. 2006), and some of our fellow circuits have done so in federal-sector discrete retaliation cases, *see, e.g.*, *Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008); *Patterson v. Johnson*, 505 F.3d 1296, 1299 (D.C. Cir. 2007).

Komis seeks to apply that standard to her federal-sector claim of a retaliatory hostile work environment. All of the conduct that Komis alleges created a hostile work environment—for example, changes in her job duties and assignment to a different position—flows from "employment and the workplace," *Burlington Northern*, 548 U.S. 63. Komis accordingly does not claim the instruction failed to account for *Burlington Northern*'s recognition of conduct outside the workplace. Instead, she contends the court set too high the level of harm she had to prove in instructing the jury that a hostile work environment required conduct severe or pervasive enough to change the terms and conditions of her employment rather than simply conduct that was materially adverse.

Whatever the room in magnitude of harm between conduct severe or pervasive such that it affects the terms and conditions of employment and materially adverse conduct that would dissuade a reasonable worker from invoking her antidiscrimination rights, Komis has not shown how it might change the outcome in her case.[9] The "*material* adversity" standard "separate[s] significant from trivial harms,"

---

[9] We observe several Courts of Appeals continue to ask whether the claimant's workplace is permeated with conduct severe or pervasive enough to change the conditions of the claimant's employment in reviewing Title VII retaliatory hostile work environment cases after *Burlington Northern*. *See Flanagan v. Office of Chief Judge*, 893 F.3d 372, 375 (7th Cir. 2018); *Duplan v. City of New York*, 888 F.3d 612, 627 (2d Cir. 2018); *Baird v. Gotbaum*, 792 F.3d 166, 168–69, 171–72 (D.C. Cir. 2015); *Maldonado-Cátala v. Municipality of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017); *Gowski*, 682 F.3d at 1311.

*Burlington Northern*, 548 U.S. at 68, and unquestionably leaves in place a plaintiff's burden to show the allegedly hostile work environment was motivated by retaliatory animus, *see Jensen*, 435 F.3d at 452 ("[W]hile we must consider the totality of the circumstances, some circumstances do not affect our analysis because they are not retaliatory."). Komis does not explain why the jury would have determined the harms alleged by her sixty-some EEO claims taken together were not severe or pervasive enough to effect the terms and conditions of her work, yet were materially adverse enough to dissuade a reasonable person from making a charge of discrimination.

The government further offers the compelling argument that Komis failed at trial to offer facts establishing a retaliatory hostile work environment because many of her claims lacked a causal connection to protected conduct. *See Moore*, 461 F.3d at 340–42. Komis, for instance, contends one of the incidents creating a retaliatory hostile work environment was her supervisor Russo's decision to deny her request to work regularly at home—but Komis had last filed an EEO claim in 1993, and offered no reason to think Russo's decision to deny that request in 2003 was made in retaliation for her decade-old EEO claim. Given that no other employee in Komis's office was given permission to work regularly at home, the decision not to give Komis such unique dispensation does not appear materially adverse or even objectionable. In another example, Komis alleged Russo unfairly disciplined her, but several of those allegedly retaliatory incidents took place before Russo knew Komis had filed EEO complaints, again undermining the notion that the discipline was issued in retaliation for protected conduct.

Moreover, Komis fails to rebut the government's legitimate, non-retaliatory explanations for the alleged retaliatory conduct as required under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Komis claims that as a result of her filing discrimination complaints with the EEOC, her job duties were changed and she was given the work of a clerk. She also claims she was subjected to harsher punishment. The government offered overwhelming evidence that (1) there were fewer industrial hygiene assignments overall, (2) Komis's Voluntary Protection Program (VPP) duties made it difficult to schedule Komis for such assignments, (3) OSHA's focus shifted under a new presidential administration, (4) her three suspensions were proper disciplinary actions appropriate for Komis's infractions of direct insubordination and forwarding of internal OSHA emails outside the agency, and (5) clerical duties were actually part of her job description from the time she took the position. Komis failed to offer any evidence rebutting these justifications. On appeal, she offers hardly any fact-based response at all to the government's claim of harmless error. We thus conclude that any error in the jury instruction was harmless.

## VI.

For the reasons provided, we will affirm the judgment of the trial court.