**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1426
_____

HARRY WATKINS,
Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-20-cv-00597)
District Judge:  Honorable Nora Barry Fischer
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 7, 2023
_____

Before:  CHAGARES, Chief Judge, HARDIMAN and MONTGOMERY-REEVES,
Circuit Judges

(Opinion filed: September 12, 2023)
_____

OPINION[*]
_____

---

[*]    This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

Harry Watkins filed a lawsuit against the Pennsylvania Department of Corrections ("DOC"), claiming that he was subjected to a hostile work environment in retaliation for protected activity. The District Court granted summary judgment in favor of the DOC. For the reasons explained below, we will affirm the judgment of the District Court.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Watkins began working for the DOC at the State Correctional Institution at Mercer ("SCI Mercer") as a trainee in 2008. A year later, he became a corrections officer. He served as president of the local union from 2017 to 2019. He remains employed as a corrections officer at the facility.

In his capacity with the union, Watkins was deposed in November 2018 on behalf of a female employee who had filed a Title VII lawsuit against the DOC. Watkins's wife applied to work at SCI Mercer that same month, but it took a year and a half for her to receive an official offer. Watkins filed his first of five complaints with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on June 7, 2019, while his wife's hiring process was ongoing. In his first complaint, Watkins alleged that the DOC's treatment of his wife's job application was retaliation for his deposition.

Watkins filed a second complaint with the EEOC and PHRC on July 19, 2019, alleging that a series of events in June 2019 was retaliation for filing his first complaint. He claimed that because he filed his first complaint, he was re-assigned to an unfavorable

2

block; he received a disappointing performance evaluation; he was told that he could no longer speak with trainees about the union while he was on duty; and he was subjected to threats from Lieutenant James Johnson, including that he "can make his life hell." Appendix ("App.") 413.

Watkins contends that he was disciplined formally for abandoning his post in late June 2019, just before he filed his second complaint. Watkins claims that, five days after filing that complaint, Johnson falsely accused him of again abandoning his post, an incident which led to no discipline, although Watkins "did not recall the specifics of what occurred." Watkins Br. 9. Watkins filed a third complaint with the EEOC and PHRC on August 5, 2019. He alleged that the formal discipline for abandoning his post and the false accusation of again abandoning his post were retaliation for filing his second complaint.

A few months later, Johnson left a voicemail for Brian Muszynski, another corrections officer. Watkins claims that Johnson's voicemail stated that Muszynski was needed in the yard because only females and Watkins, who had "no testosterone," were out there. App. 142–43. Watkins further contends that a few weeks later, Muszynski played the voicemail to other co-workers. The next month, Watkins received an email from a unit manager, claiming that he did not conduct cell inspections during a prior shift. Watkins sent the manager a copy of the logbook entries indicating that he had completed the inspections; no further action was taken on the matter. Watkins filed his fourth complaint with the EEOC and PHRC on February 10, 2020, alleging that Johnson's voicemail and the cell inspection email were retaliation for filing his third

3

complaint.

Two months later, Watkins injured his arm on the job. He was cleared to return to work on light duty a few weeks later. Watkins claims that instead of assigning him to one of the existing light duty posts, the DOC created a new position for him. That position, according to Watkins, required him either to "stare[] at a wall all night" or to perform work involving inmate contact or use of his injured arm in violation of the light duty restrictions. App. 173. Watkins then filed his fifth complaint with the EEOC and PHRC, alleging that his light duty assignment was retaliation for filing his fourth complaint.

Watkins contends that the retaliation continued after he filed his fifth complaint. From September 1, 2020 through at least February 5, 2021 — the date of his deposition in this lawsuit — Watkins claims that he experienced an increase in payroll errors, leading to the loss of an estimated "couple thousand dollars." App. 183–84. Watkins does not claim to have filed any additional complaints with the EEOC or PHRC.

In his operative complaint in this lawsuit, Watkins raises two counts of Title VII retaliatory hostile work environment based on the events underlying and subsequent to his five complaints to the EEOC and PHRC.[1] The District Court granted summary judgment to the DOC, and Watkins timely appealed.

---

[1] Watkins also raised one count of Title VII retaliation based on the DOC's treatment of his wife's job application. Watkins later withdrew that claim and the District Court entered judgment in the DOC's favor.

4

Title VII prohibits retaliation on the basis of protected conduct. 42 U.S.C. § 2000e-3(a). Under that provision, employees may bring claims of a retaliatory hostile work environment. Komis v. Sec'y of U.S. Dep't of Lab., 918 F.3d 289, 293 (3d Cir. 2019). To survive summary judgment, an employee alleging a retaliatory hostile work environment must prove that: "(1) [H]e suffered intentional discrimination because of [his] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected h[im]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." Id. (citation omitted). The District Court held that Watkins failed to prove the first element as to most of the alleged acts of retaliation and the second element as to all acts.[3] We agree.

A.

Most of Watkins's claims fail because he did not establish that he suffered intentional discrimination because of his protected activity. The parties do not dispute that Watkins's five complaints to the EEOC and PHRC constitute protected activity. But to prove a causal connection between the alleged retaliation and the protected activity,

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo. See Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[3] Because Watkins's claims fail under first two elements, we decline to consider the District Court's holding on the fifth element.

Watkins needs "some evidence that the individuals responsible for the [retaliation] knew of the plaintiff's protected conduct at the time they acted." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015); see also Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). Watkins failed to make that basic showing as to most of the alleged acts of retaliation.

Watkins's main argument is that those responsible knew because "[e]verybody knows" and "there's no secrets in jail." App 122. But on summary judgment, "the nonmoving party must affirmatively show where in the record there exists a genuine dispute over a material fact" and "speculation and conjecture may not defeat a motion for summary judgment." Wharton v. Danberg, 854 F.3d 234, 244 (3d Cir. 2017) (cleaned up). Watkins's assertions do not overcome that burden.[4]

Several of Watkins's more specific allegations of knowledge fare no better. The District Court reviewed the record in detail and rightly concluded that Watkins had not presented any evidence that those responsible for the alleged retaliation following his first and fifth EEOC complaints knew about the protected activity. On appeal, Watkins does not address those detailed conclusions and we see no reason to disturb them.

With respect to the unit manager's email about cell inspections, Watkins fails to identify any evidence about what made the manager write the e-mail in the first place and

---

[4] Watkins also argues that courts should not "expect those accused of retaliatory conduct to admit to knowledge of protected activity when denying it shields them from liability." Watkins Br. 21. Although we recognize that individuals are unlikely either to "admit discriminatory animus or leave a paper trail demonstrating it," Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1082 (3d Cir. 1996) (citation omitted), that fact alone does not excuse a plaintiff from meeting his burden at summary judgment.

whether she violated protocol when she did not check the logbook entries before sending it. That lack of evidence — combined with the fact that no action was taken once Watkins informed the manager that he had inspected the cells — belies Watkins's contention that the email was sent because he had filed his third complaint. And as to the creation of the light duty post, Watkins argues that "it is more than reasonable to assume that the only entities with the authority to create a position out of thin air would be the HR office and the Superintendent." Watkins Br. 29. While human resources ("HR") and the superintendent knew about his complaints, Watkins does not identify any evidence — or cite to the record at all — to support his inference that HR or the superintendent were involved in the creation of the assignment. Without any evidence about who was responsible for the purported retaliation, Watkins cannot show that those responsible knew about the protected activity.

Watkins has met the knowledge requirement with respect to some of the purported retaliation involving Johnson and the payroll errors. We can infer that an individual knows about a complaint to the EEOC or PHRC when "it contain[s] specific allegations against them." Daniels, 776 F.3d at 197. Watkins's second complaint names Johnson, among other DOC employees. Johnson's alleged false accusation that Watkins abandoned his post and his voicemail claiming Watkins lacked testosterone occurred after this complaint was filed.[5] The same holds true for Watkins's claims regarding the

---

[5] Watkins also alleges that Johnson told another officer that he "can make [Watkins's] life hell," App. 413, but that incident occurred before Watkins filed his second complaint naming Johnson. It thus does not support an inference that Johnson knew about Watkins protected activity at the time of the alleged threat.

purported payroll errors, since each of his five complaints were faxed to HR and the payroll errors allegedly started increasing in frequency about a month after he filed the fifth complaint. Because we can infer that both Johnson and personnel in HR were aware of the complaints prior to their alleged retaliatory actions, Watkins has done enough to show knowledge with respect to those actions.

In sum, Watkins cannot prove most of the acts of retaliation occurred because of his protected conduct — the first element of a retaliatory hostile work environment claim. He did, however, make the minimal showing of knowledge as to Johnson's purportedly false accusation that he abandoned his post, Johnson's "no testosterone" voicemail, and the alleged payroll errors.[6]

## B.

The remaining alleged instances of retaliation — Johnson's accusation that Watkins abandoned his post, the "no testosterone" voicemail, and the alleged payroll errors — are not severe or pervasive. To show that the retaliation was severe or pervasive, Watkins must prove his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (cleaned up). But "'offhand[] comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a

---

[6] Proof of knowledge may not be enough on its own to establish the requisite causal connection. But because Watkins has not met his burden to show a triable issue on the second element as to those acts of retaliation, we need not consider the first element further.

hostile work environment claim." Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). In considering whether the retaliation was severe or pervasive, "we consider the totality of the circumstances," and our analysis "must concentrate not on individual incidents, but on the overall scenario." Id. at 262–63 (cleaned up).[7]

Watkins did not produce any evidence about Johnson's purportedly false accusation that he abandoned his post, and so we cannot conclude that the incident was severe or pervasive. He relies only on the allegations in the operative complaint, which are insufficient on their own to survive summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Johnson's purported voicemail stating that Watkins had "no testosterone," App. 143, meanwhile, is just the sort of taunt that has been held to be insufficiently severe or pervasive to be actionable. Faragher, 524 U.S. at 788. And the fact that the comment was not made directly to Watkins further supports that it is the type of "offhand[] comment[] . . . that the Supreme Court . . . cautioned should not be considered severe or pervasive enough to constitute a hostile work environment." Caver, 420 F.3d at 263 (citations omitted).

The payroll errors also do not rise to the level of severe or pervasive. Though Watkins claims he experienced an increase in errors for several months, it is unclear

---

[7] Watkins argues that the District Court erred because it "analyzed each incident of alleged conduct separately," when it was supposed to consider the totality of the circumstances. Watkins Br. 31. But that contention is contradicted by the District Court's well-reasoned opinion, which analyzed the conduct both individually and together.

whether Watkins himself took the issue seriously, as he did not call the listed number to try and resolve the problem. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993) ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). He also did not identify any evidence about the nature of the alleged errors, and we are left with nothing but his blanket assertion that the frequency of those errors increased. With such a bare record, we cannot conclude that the errors were severe or pervasive.

Taken together, the incidents are not of the sort that we have found to constitute retaliation that is sufficiently severe or pervasive to create a hostile work environment. Looking at "all the circumstances," the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," Harris, 510 U.S. at 23, a reasonable juror could not conclude that the retaliation Watkins purportedly experienced was severe or pervasive.[8]

In sum, none of the purported retaliation was severe or pervasive. Watkins's hostile work environment claim accordingly fails in its entirety on the second element.

---

[8] Our conclusion remains the same when we consider the other instances of retaliation Watkins alleged, including those for which he did not prove that the responsible individuals knew about his protected activity. Watkins has not established that a reasonable juror could find any of the alleged retaliation — whether individually or taken together — to be sufficiently severe or pervasive in light of the totality of the circumstances.

10

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.