COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Chaney and White
Argued at Lexington, Virginia

**UNPUBLISHED**

JEREMIAH UNIQUE PANNELL

v.      Record No. 1410-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY BENNETT MALVEAUX
JULY 8, 2025

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
James R. Swanson, Judge

Aaron B. Houchens (Aaron B. Houchens, P.C., on briefs), for
appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, the trial court convicted Jeremiah Unique Pannell ("appellant") of

attempted robbery causing serious bodily injury or death, in violation of Code §§ 18.2-58(B)(1) and

-26.[1] On appeal, appellant contends that the trial court erred in admitting a certain statement in

violation of the rule against hearsay and that the evidence was insufficient to support his conviction.

Finding no error, we affirm the trial court's judgment.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Appellant was acquitted of felony murder, in violation of Code § 18.2-31(4), and use of
a firearm in the commission of a felony, in violation of Code § 18.2-53.1.

Accordingly, we must "regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On October 11, 2021, Zachary Draper and Gary McMiller were working at a McDonald's restaurant when Draper received a message from appellant's pseudonymous Facebook account, asking if Draper had marijuana. Draper responded that McMiller could get some, and the two agreed to meet in the McDonald's parking lot.

Appellant arrived about an hour later and parked a car in the parking lot. As Draper and McMiller approached the passenger side of appellant's vehicle, Draper saw appellant in the driver's seat as well as two other individuals wearing masks, one in the front passenger seat and another in the back. McMiller began to discuss "money and the weed," and Draper observed that appellant had "[a] few hundred dollars" in his hand. Appellant told McMiller there was more money in the back seat, and the rear passenger began searching for it. The front passenger exited the car. McMiller turned to walk back into the building, at which point Draper heard the front passenger command McMiller, "Run your shit."[2] McMiller told the front passenger, "You look like you're strapped."[3] The passenger confirmed that he was armed.

McMiller and the front passenger began to struggle, during which time appellant and the rear passenger exited the car. As the two fought, Draper heard a gunshot. Draper and McMiller fled into the restaurant, where they discovered that McMiller had been shot. Appellant and his passengers drove away. McMiller died from a gunshot wound to his torso.

---

[2] Draper understood this to mean "give me everything."

[3] Draper understood this to mean that the front passenger had a firearm.

Another McDonald's employee, Nick Dales, saw the incident. He heard someone who was neither Draper nor McMiller say to McMiller, "You better run your shit before I pop your ass." Two or three seconds later, Dales heard a gunshot.

During their investigation, police found a car matching the one appellant drove to the McDonald's hidden in some dense brush near a home owned by appellant's father. The car was registered to appellant's father. The bullet recovered from McMiller's body was consistent with a .38 Special or .357 Magnum bullet that had been fired from a .38 or .357 caliber revolver.

When appellant was arrested, he gave two false names before identifying himself. A search of appellant's Facebook account revealed that appellant had, a few days before the incident, sent messages containing pictures of a .38 Special revolver. Snapchat videos from the days preceding the shooting showed appellant in possession of a similar revolver. Police also found multiple messages from the account seeking to purchase marijuana on the night of the incident. Appellant had messaged Draper that night but removed him as a friend that same night.

At trial, appellant objected to the admission of the front passenger's "run your shit" statement as inadmissible hearsay. The trial court ruled that the statement was hearsay that was admissible under either the statement against interest, then-existing mental state, or excited utterance exceptions.

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike the evidence, arguing that the Commonwealth failed to prove that he "shared the intent of anybody else at the scene" or that there was a plan to rob anyone. The trial court denied the motion to strike, along with appellant's renewed motion. The jury convicted appellant of attempted robbery causing serious bodily injury or death.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to support his conviction for attempted robbery, because he lacked the intent to commit robbery and he committed no overt act to support the passenger's attempt.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"In the context of a robbery, despite having the intent to do so, if no person has been subjected to force, violence or intimidation and no demand to part with personal property made, neither robbery nor attempted robbery has yet occurred," whereas

> [a]t the other end of the spectrum, if both have been accomplished and personal property taken, a completed robbery has occurred. Between those points, if an act constituting any of those elements

- 4 -

> has commenced, the crime of attempted robbery has occurred even if the enterprise is abandoned or interrupted before completion.

*Jones v. Commonwealth*, 70 Va. App. 307, 331 (2019) (en banc).

"In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." Code § 18.2-18. Where "[a] principal in the first degree is the actual perpetrator of the crime," *Thomas v. Commonwealth*, 279 Va. 131, 156 (2010) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005)), a "principal in the second degree . . . is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime," *id.* (quoting *Muhammad*, 269 Va. at 482). Proof that a person was "present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same." *Id.* (quoting *Foster v. Commonwealth*, 179 Va. 96, 100 (1942)).

Here, an attempted robbery occurred: the front passenger confirmed that he was armed and commanded McMiller, "Run your shit," which can be understood to mean "give me everything." In this context—given the amount of money present and the type of transaction that was occurring—the jury could reasonably infer that the passenger was attempting to rob McMiller. And appellant assisted in the attempt. He arranged to meet McMiller and Draper to purchase marijuana, then transported two passengers to the McDonald's parking lot. There, the front passenger attempted to rob McMiller, then shot him. Appellant acted as a getaway driver. Following the attempted robbery, appellant's car was hidden in bushes near his father's house, and the gun used in the shooting closely matches one that was in appellant's possession in the days preceding the incident. When questioned by police, appellant provided a false name. *See Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022) ("[I]t is today universally conceded that the

- 5 -

fact of an accused's flight, . . . assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." (first alteration in original) (quoting *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992))). Viewing the evidence in total, we conclude that it was sufficient to sustain the jury's conviction of appellant as a principal in the second degree to attempted robbery.

### B. Hearsay Statement

Appellant also argues that the trial court erred in admitting the first passenger's statement "run your shit" because it was inadmissible hearsay not subject to any exception.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "In evaluating whether a trial court abused its discretion . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). "Under this deferential standard, the 'trial judge's ruling will not be reversed simply because an appellate court disagrees.'" *Brown v. Commonwealth*, 68 Va. App. 746, 770 (2018) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Thomas*, 44 Va. App. at 753.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). For the purposes of the hearsay rule, a "statement" is defined as "an oral or written assertion." Va. R. Evid. 2:801(a). Accordingly, "if the declarant states something that cannot be proven true or untrue—*i.e.* does not make an assertion—then the trier of fact is not asked to make a

credibility determination and the purpose of the hearsay rule is not served by exclusion." *Davis v. Commonwealth*, 73 Va. App. 500, 507-08 (2021).

> Additionally, statements are only inadmissible hearsay if they are offered for a particular purpose: to prove the truth of the matter asserted therein. If the value of the evidence is not tied to its credibility—*i.e.* is not offered for its truth—then the hearsay rule does not operate to exclude it.

*Id.* at 508. Therefore, there is a two-step test for determining whether an out-of-court communication constitutes hearsay:

> courts must first determine whether an out-of-court declaration asserts any fact. If they do not, then the inquiry ends, and the hearsay rule does not prohibit the trier of fact from considering the words. Next, if the out-of-court declaration is a factual assertion and thus satisfies the definition of a statement, the court must then determine the purpose for which it is admitted. If the words are offered for their truth, the statements should properly be classified as hearsay, and only then must the court consider if the statements fall within one of the exceptions to the hearsay rule. If the statements are not offered for their truth, based on the context and other evidence in the case, including the actual use by the proponent at trial, then the statements are admissible unless they run afoul of some other evidentiary rule.

*Id.*

In *Davis*, we analyzed out-of-court statements that could "be separated into two categories: non-assertive inquiries or instructions, and express assertions of fact." *Id.* at 509. In the first category were the statements: "ask Barnett how much five bars of Xanax are" and "tell Barnett you are five minutes from the McDonald's." *Id.* at 510. We noted that these statements "contain no factual assertions whatsoever but are instead non-assertive inquiries or instructions" and that they "do not assert any fact that can be proven true or untrue, nor do they impliedly assert some fact that can be proven true or untrue. Therefore, it was impossible for these statements to be offered for their truth." *Id.* at 509-510. We concluded that because the

declarant "did not assert anything in these inquiries, the jury could not have possibly considered them for their truth and the hearsay rule did not prohibit their admission." *Id.* at 510.

Here, similarly, the statement "run your shit" is not hearsay because it contains no factual assertion. *See id.* at 509. In making the statement, the first passenger was not asserting anything but instead instructing McMiller to "give [him] everything." Like the non-hearsay instructions in *Davis*, the first passenger's instruction to "run your shit" cannot, in and of itself, be proven true or untrue. Because it is not a factual assertion and therefore does not satisfy the definition of a "statement," we need not determine the purpose for which it was admitted in order to reach the conclusion that it is not hearsay. Accordingly, the statement was admissible.[4]

"We have long said that '[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'" *Banks v. Commonwealth*, 280 Va. 612, 617 (2010) (alteration in original) (quoting *Eason v. Eason*, 204 Va. 347, 352 (1963)). Here, while the trial court incorrectly ruled that the statement was hearsay that was admissible under various exceptions, it ultimately did not err in admitting the statement because it was admissible non-hearsay.[5]

---

[4] We decline to accept the Commonwealth's invitation to expand this principle to the extent of some federal circuits. *See, e.g.*, *Flanagan v. Office of the Chief Judge*, 893 F.3d 372, 374-75 (7th Cir. 2018) ("Commands are not statements submitted for their truth and so are not hearsay."); *see also United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006) ("Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay."). We do not decide today whether all commands or questions, in all contexts, constitute hearsay. *See Davis*, 73 Va. App. at 509-10 (noting, with respect to the two aforementioned instructions, that while "inquiries *can* constitute assertions of fact if they are intended or argued by counsel as such, that is plainly not the case here" (emphasis added)). Rather, we decide only that the particular instruction the first passenger gave to McMiller, "run your shit," is not hearsay because it was "non-assertive" in this particular context. *Id.* at 509. This is apparent from appellant's counsel's concession, at oral argument, that without the relevant factual context, "we don't know what [the statement] means . . . we have to have this other context."

[5] In addition, even assuming that the statement is hearsay, the trial court would have been correct to admit it under the exception for the declarant's then-existing mental state: the first passenger's intent to rob McMiller, in which appellant shared. *See* Va. R. Evid. 2:803(3).

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*