**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1081
_____

SAMANTHA PEIFER,
Appellant

v.

COMMONWEALTH OF PENNSYLVANIA, BOARD OF
PROBATION AND PAROLE
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(District Court No. 2-21-cv-05432)
District Judge:  Honorable Chad F. Kenney
_____

Argued on January 30, 2024
_____

Before:  KRAUSE, PORTER, and CHUNG, <u>Circuit Judges</u>

(Filed: July 3, 2024)

David M. Koller [**ARGUED**]
Koller Law

2043 Locust Street
Suite 1B
Philadelphia, PA 19103

      *Counsel for Appellant*


Michael J. Scarinci [**ARGUED**]
Office of Attorney General of Pennsylvania
Strawberry Square 15th Floor
Harrisburg, PA 17120

      *Counsel for Appellee*
_____

OPINION OF THE COURT
_____

**CHUNG**, Circuit Judge.

Samantha Peifer sued her employer, the Pennsylvania Board of Probation and Parole ("Board"), claiming pregnancy discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pregnancy Discrimination Act ("PDA"). The District Court granted the Board's motion for summary judgment.

We will affirm in part and vacate in part. We agree with the District Court that Peifer's claims partly fail but conclude that the District Court is best situated to analyze in the first instance the impact, if any, of the Supreme Court's recent holding in Muldrow v. City of St. Louis, 144 S. Ct. 967 (2024), on whether Peifer makes out a prima facie case under an adverse employment action theory based on the Board's

denials of her accommodation requests. We further conclude that Peifer makes out a prima facie case of pregnancy discrimination based on the Board's denials of her light-duty requests under a failure to accommodate theory. We will thus vacate and remand as to Peifer's adverse employment theory and failure to accommodate theory for further analysis, and affirm the District Court's decisions on Peifer's constructive discharge allegation and retaliation claim.

I.      BACKGROUND

A.      Peifer's Background

Samantha Peifer worked for the Board as an Alcohol and Other Drugs agent. In that role, she worked with drug and alcohol offenders on parole. Her job required her to be able to perform various physical functions—for instance, running to catch escaping offenders, restraining offenders during arrests, and moving offenders to take them into custody.

In September 2019, Peifer was diagnosed with multiple sclerosis. About four months later, in January 2020, she learned that she was pregnant

B.      Peifer Asks for Light Duty and Files Her First EEOC Charge

Around March 2020, Peifer began asking the Board to accommodate her inability to perform certain tasks due to her pregnancy by assigning her to work "light duty," also known

3

as "modified duty."[1]  App. 247.  At first, she made informal requests.  On March 14, 2020, she formally requested light duty by sending an email with a doctor's note to her supervisor, Joseph Bentzley.  Peifer said that she was concerned about her pregnancy and asked to do the same type of modified work that the Board provided for employees who were injured at work or on "desk duty" for discipline.  Id. (internal quotation marks omitted).

The Board's Eastern District Director, Michelle Rivera, denied Peifer's request the next day.  Rivera said that "[m]odified/light duty for any Parole Board employee is only approved for work related injury."  Id. at 247–48.  Rivera also told Peifer that if she could not "meet all of [the] essential functions" of her job, she should talk to the Board's Family and Medical Leave Act ("FMLA") coordinator, id. at 248, in effect, to discuss taking unpaid leave under the FMLA.

A few days later, on March 25, Peifer sent Director Rivera and supervisor Bentzley an updated doctor's note.  The note listed ninety-four functions of Peifer's role and said that Peifer could not perform twenty-three of them.  For example, the note said that Peifer could not run or use certain kinds of force to catch, arrest, or move offenders.  Rivera responded almost immediately and repeated the statements in her first denial: that the Board only approved light duty for employees with work-related injuries and that if Peifer could not do the

---

[1]  The parties use the terms "light" and "modified" duty interchangeably.  Unless quoting the record, we will use the term "light duty."

4

essential functions of her job, she should talk to the FMLA coordinator.

Peifer took leave starting on March 26. She used a combination of unpaid FMLA leave and vacation time. About a month later, on April 21, Peifer filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex, pregnancy, and disability, as well as retaliation.

On May 14, 2020, the Board changed course and supervisor Bentzley emailed Peifer to say that the Board had "the ability to accommodate [her] request [for modified duty] based on [her] physician's restrictions." Id. at 248–49 (alterations in original). The Board did not state why it could now accommodate her light-duty request and, during discovery in this case, Bentzley testified that the accommodation was provided due to Peifer's multiple sclerosis diagnosis. In assigning Peifer to light duty, the Board provided Peifer with a "Modified Duty Position Description." Id. at 249. The Position Description said that Peifer's work would be modified according to the "restrictions" in her doctor's note. Id. It also said that Peifer would work a specified "schedule" and that the "majority of [her] responsibilities" would be "conducted in the office." Id. Peifer signed the Position Description.

Peifer ended her leave and began her light-duty assignment on May 18. When she resumed work, the Board reinstated the leave that Peifer took and reimbursed her for the salary she lost during her period of unpaid leave.

5

C.     Peifer Asks for Another Accommodation and Files Her Second EEOC Charge

Ten days after Peifer began her light-duty assignment, on May 28, 2020, she asked for another accommodation. She submitted another doctor's note stating her doctor's opinion that she should "be allowed to work from home due to her high risk pregnancy and her risk of exposure to COVID-19 in the workplace," or "[i]f that is not possible, she must be provided the proper personal protective equipment in the form of a mask, face shield and gloves at all times." Id. at 250. In response, the Board provided her with personal protective equipment ("PPE"), but did not let her work from home. The Board explained to Peifer that, consistent with her Modified Duty Position Description, her "modified duty position … require[d her] to report to the office and complete a majority of [her] job responsibilities in the office." Id. at 237.

Peifer filed a second charge with the EEOC on June 26, 2020 alleging discrimination based on sex, pregnancy, and disability, as well as retaliation.

D.     Peifer Resigns and Files Her Third EEOC Charge

On September 23, 2020 Peifer resigned by email. She stated, "I am resigning solely in response to the discriminatory treatment I have been subjected to by yourself and others in my chain of command and consider myself constructively discharged." Id. at 250.

After Peifer resigned, she filed a third charge with the EEOC, again alleging discrimination based on sex, pregnancy, and disability, as well as retaliation.

6

E.    Procedural History

The EEOC issued Peifer a right-to-sue letter for all three charges.  Peifer then filed a complaint against the Board in the United States District Court for the Eastern District of Pennsylvania.  She claimed discrimination and retaliation under Title VII and the PDA.[2]  The Board moved for summary judgment, and the District Court granted its motion, deciding that Peifer could not make out a prima facie case for any of her claims.  Peifer timely appealed.

II.    DISCUSSION[3]

Peifer challenges the District Court's order granting summary judgment for the Board.  We conduct plenary review of the District Court's summary judgment ruling.  See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017).  Summary judgment is appropriate if the Board has shown that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[2]    Peifer brought other claims under state and federal law. The Board filed a partial motion to dismiss for lack of jurisdiction, and the District Court dismissed all of Peifer's claims but the ones discussed here.

[3]    The District Court had jurisdiction under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1367(a).  We have jurisdiction under 28 U.S.C. § 1291.

7

255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59 (1970)).  Applying that standard, we evaluate Peifer's discrimination and retaliation claims in turn.

A.      Discrimination Claim

Peifer brings her pregnancy discrimination claim under Title VII and the PDA.  Title VII prohibits employers from discriminating against employees based on certain protected characteristics, including "because of … sex."  42 U.S.C. § 2000e-2(a)(1).  The PDA amends Title VII to specifically prohibit discrimination against pregnant employees.  See id. § 2000e(k).  It does so in two key ways.

First, the PDA makes clear that Title VII's prohibition against sex discrimination includes pregnancy discrimination.  It does so through its first clause, which provides that "[t]he terms 'because of sex' or 'on the basis of sex'" in Title VII "include … because of or on the basis of pregnancy."  Id.  This is the first theory of pregnancy discrimination that Peifer alleges, claiming that she suffered adverse employment actions because of her pregnancy ("adverse employment action theory").

Second, the PDA specifically provides that employers may not discriminate in the way they treat pregnancy-related inability to work.  It does so through its second clause, which states that "women affected by pregnancy … shall be treated the same for all employment-related purposes … as other persons not so affected but similar in their ability or inability to work."  Id.; see also Young v. United Parcel Serv., Inc., 575 U.S. 206, 226–28 (2015) (explaining how the PDA's two clauses work together); Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 284–85 (1987) (same).  This is the second theory

8

of pregnancy discrimination that Peifer alleges, claiming that the Board failed to accommodate her while it accommodated other Board employees similar in their inability to work ("failure to accommodate theory").

Peifer does not offer direct evidence of discrimination; as a result, she must prove discrimination using the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Young, 575 U.S. at 213.

Under the McDonnell Douglas framework, the plaintiff has the "initial burden … of establishing a prima facie case of … discrimination." McDonnell Douglas, 411 U.S. at 802. Although the Supreme Court has repeatedly emphasized that the elements of that prima facie case will vary with different factual situations, it has said that at root, the plaintiff's initial burden is to show "[adverse] actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII].'" Furnco Const. Corp. v. Waters, 438 U.S. 567, 576 (1978) (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)). If an employee establishes a prima facie PDA case, whether under an adverse employment action theory or under Young, the burden shifts to the employer to "seek to justify its refusal to accommodate" by offering "'legitimate, nondiscriminatory' reasons for denying her accommodation." Young, 576 U.S. at 229 (quoting McDonnell Douglas, 411 U.S. at 802); see also Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008). If the employer does offer a legitimate, nondiscriminatory reason, then the burden returns to the employee to show that the employer's reasons were "pretextual." Young, 576 U.S. at 229.

9

Peifer argues that she can establish a prima facie case as to each of her two theories: (1) by a more traditional showing that she suffered an "adverse employment action" because she was pregnant; and (2) by showing that the Board failed to accommodate her in the same way it accommodated non-pregnant employees who had a similar inability to work as set forth in Young. See id. We address each below.

1. Adverse Employment Action

Under the more traditional version of the McDonnell Douglas framework, an employee can make out a prima facie case by showing, among other things, that she suffered an "adverse employment action" because of a protected characteristic. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999). Peifer argues that she "suffered two adverse employment actions: denial of a reasonable accommodation and constructive discharge" because of her pregnancy. Opening Br. 25.

We begin with Peifer's argument that she was constructively discharged when she resigned in September 2020, and conclude that Peifer cannot show that she was constructively discharged. We evaluate claims of constructive discharge under an "objective standard" that asks "whether a reasonable person under the circumstances 'would have felt compelled to resign.'" Judge v. Shikellamy Sch. Dist., 905 F.3d 122, 125 (3d Cir. 2018) (quoting Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010)). Peifer's working conditions—working light duty with the provision of PPE—do not reach that level. Indeed, these accommodations were provided in response to, and consistent with, Peifer's doctor's opinions. Peifer offers no evidence that the conditions her doctor endorsed were in fact so intolerable that they would

10

have forced a reasonable person to quit. We affirm the District Court as to this asserted adverse employment action.

Our analysis of Peifer's argument based on the Board's denials of her accommodation requests is different, however. The District Court decided that the Board's denials did not constitute adverse employment action, relying upon this Circuit's precedent and finding that Peifer did not allege facts reflecting a "significant" employment-related harm. App. 11. Specifically, the Court found lacking Peifer's allegations that she suffered forced leave and corresponding temporary loss of pay and benefits, uncertainty, revocation of state-issued equipment that flowed from it, a less flexible work schedule, and an unsafe work environment during her modified-duty assignment. The District Court concluded that although Peifer raises "many grievances," they "do not rise to the level of an adverse employment action." Id. at 13.

However, while this appeal was pending, the Supreme Court held in Muldrow v. City of St. Louis, 144 S. Ct. 967 (2024) that, contrary to our prior precedent, an employee need not demonstrate that the asserted adverse employment action was a "serious and tangible" employment-related harm. Komis v. Sec'y of U.S. Dep't of Lab., 918 F.3d 289, 292 (3d Cir. 2019) (quoting Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015)). In Muldrow, the Court rejected that the harm must be "serious," "significant," "substantial," or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." 144 S. Ct. at 974. Rather, the Court explained that an adverse employment action means simply that the employee suffered "some harm" to a term or condition of employment—in other words, that the employer treated the employee "worse" because of a protected

11

characteristic.  Id.

Because Muldrow made clear that adverse employment action need not be serious, we will remand so that the District Court can consider in the first instance whether Peifer has asserted harms sufficient to establish "some" employment-related harm for her prima facie case under Muldrow.[4]

## 2. Failure to Accommodate

The Supreme Court set out the elements of a prima facie failure to accommodate case in Young: The employee must show that (1) "she belongs to the protected class," (2) "she sought accommodation," (3) "the employer did not

---

[4] The District Court also decided that Peifer's adverse employment action theory failed because her evidence did "not sufficiently satisfy the fourth prong … of establishing an inference of unlawful discrimination." App. 11.  As this was an alternative holding, the District Court did not provide as thorough an explanation for its reasoning as it did for its adverse employment action analysis.  The District Court's reasons for its conclusion are therefore somewhat unclear.  The District Court appears, at least in part, to have relied upon its conclusion that the Board accommodated Peifer.  As explained below, however, we have concluded that the Board did not accommodate Peifer when it denied her light-duty requests.  Because the District Court's reasons are not clearly discernable, or are tied to other conclusions with which we have disagreed or chosen to remand in light of Muldrow, we also remand for the District Court to consider whether there is a genuine dispute of material fact that an inference of unlawful discrimination can be drawn.

12

accommodate her," and (4) "the employer did accommodate others 'similar in their ability or inability to work.'" 575 U.S. at 229.

Here, Peifer alleges that the Board failed to accommodate her in two ways: by (1) denying her requests for light duty beginning in March 2020 and (2) denying her request to work from home in May 2020.

Peifer cannot make out a prima facie case of discrimination based on the Board's denying her request to work from home. Peifer requested the Board accommodate her in one of two ways: working from home or providing her with PPE. The Board chose the second option. Because the Board provided her the accommodation she requested (though did not prefer), Peifer cannot establish the third element of her prima facie case, and the portion of her claim related to working from home must fail. See id. (employee must show that employer "did not accommodate her"); cf. O'Neal v. City of Chicago, 392 F.3d 909, 913 (7th Cir. 2004) (denial of an employee's "purely subjective preference" is not an adverse employment action (citation omitted)).

Peifer does make out a prima facie case, however, based on the Board's denial of her requests for light duty. The District Court decided that Peifer's claim failed on the third and fourth elements because the Board "did accommodate her," and "there is no evidence [the Board] treated Ms. Peifer differently than any others with similar limitations." App. 12. We disagree with both conclusions as they concern Peifer's light-duty requests.

As to the third element, the Board repeatedly denied Peifer's light-duty requests between March and May 2020.

13

The Board argues that it "did ultimately accommodate Peifer"—that is, when it granted her light duty two months after she asked for it. Answering. Br. 29. The District Court appears to have taken that same view. This is understandable given that Peifer was ultimately given the light-duty assignment she requested (though only after multiple initial denials and months of delay). We note, however, that neither the PDA nor Young's interpretation of the PDA make an exception for employers who grant an accommodation after significant time has passed since their denial. We, therefore, decline to read that exception into the PDA as doing so would eviscerate the PDA's purpose: Pregnancy is temporary, so if employers could deny pregnant workers accommodation for a period of months but escape liability by eventually relenting, the statute would offer very little protection.[5] The Board did not accommodate Peifer for approximately two months; thus, Peifer makes out the third element notwithstanding the fact that the Board ultimately granted her request.

As to the fourth element, the District Court said there was "no evidence" that the Board treated Peifer differently than employees with similar inability to work. App. 12. We disagree. Evidence shows that the Board denied Peifer's requested accommodation as a matter of policy solely because her inability was not caused by a work-related injury. See, e.g., Legg v. Ulster County, 820 F.3d 67, 74 (2d Cir. 2016); Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P., 46

---

[5] This reasoning might also apply when an employer *delays* granting a request to the extent that such delay is significant enough to establish that "the employer did not accommodate her." Young, 575 U.S. at 229.

14

F.4th 587, 595 (7th Cir. 2022). Although the Board later reversed itself and provided Peifer with light duty, Peifer has offered evidence that it did so because of her disability, not because of her pregnancy. This sequence of events, drawing all reasonable inferences in favor of Peifer, can create a genuine dispute that the Board denied Peifer light duty solely "'based on a discriminatory criterion illegal under' Title VII" and would have provided light duty to accommodate Peifer's inabilities so long as they were caused by work-related injuries or possibly disability, rather than pregnancy. Young, 575 U.S. at 228 (quoting Furnco, 438 U.S. at 576); see also id. at 231.

Because a reasonable jury could find that she made out a prima facie case, the burden shifts to the Board to show that it denied her light-duty requests for "legitimate, nondiscriminatory" reasons. Id. at 229. If it does, then Peifer must show that its reasons "are in fact pretextual." Id. Because the District Court decided that Peifer did not make out a prima facie case, it did not analyze whether the Board's proffered reasons were legitimate and nondiscriminatory or whether Peifer created a genuine dispute that the Board's non-discriminatory reason was pretextual. We will remand so it can do so.

B.      Retaliation Claim

Peifer also claims retaliation under Title VII. Under Title VII's antiretaliation provision, an employer may not "discriminate against" an employee "because," among other things, the employee "has opposed any … unlawful employment practice" or "made a charge" with the EEOC. 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation, therefore, a plaintiff must show that (1) "she engaged in a protected activity," (2) "she suffered an adverse

employment action," and (3) "there was a causal connection between the participation in the protected activity and the adverse action." Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006)).

Peifer does not show a causal connection between any protected activity and an adverse employment action. Peifer argues that she engaged in protected activity when she asked for accommodations and filed EEOC charges and that she suffered adverse employment actions when the Board denied her requests and constructively discharged her. Peifer's claim fails because she does not show that her protected activity caused the adverse actions she alleges (one of which, constructive discharge, we have already concluded is without merit). There is no evidence that the Board took any actions as retaliation for her EEOC charge; to the contrary, the Board changed its position and granted Peifer light duty soon after she filed her first charge. Similarly, the fact that the Board provided Peifer with an accommodation that she herself requested does not support an inference that it was retaliating against her. Thus, Peifer does not make out a prima facie case of retaliation and we affirm as to this claim.

III.    CONCLUSION

For the foregoing reasons, we will affirm in part and vacate in part, and remand for proceedings consistent with this opinion.

16