**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3050
_____

LYNN LAFIANDRA,
Appellant

v.

ACCENTURE, LLP; BARBARA HARVEY; FRANCIS HINTERMANN

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:21-cv-03261)
District Judge:  Honorable John M. Younge
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 28, 2024
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, PORTER and CHUNG, <u>Circuit</u> <u>Judges</u>.

(Opinion filed: December 16, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**CHAGARES**, <u>Chief</u> <u>Judge</u>.

Lynn LaFiandra, a former employee of Accenture, LLP, experienced lasting cognitive deficits after being struck by a car on July 8, 2015. Accenture provided disability accommodations to LaFiandra for five years but terminated her employment on September 10, 2020. LaFiandra filed suit, alleging, <u>inter alia</u>, that Accenture terminated her employment in retaliation for the exercise of a right protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA"), and because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C § 621 <u>et seq.</u> ("ADEA"). The District Court granted summary judgment in favor of Accenture. Because there are genuine disputes of material fact concerning the reasons for LaFiandra's termination, we will reverse the District Court's judgment in part and affirm it in part.

## I.

We write for the benefit of the parties and so recite only the facts pertinent to our decision. LaFiandra began work at Accenture as a consultant in 1995.[1] In 2015, while using a crosswalk, she was struck by a car and diagnosed with a concussion. Although LaFiandra returned to work within a few days of the accident, she had difficulty typing and thinking abstractly. She also suffered "debilitating" headaches. Appendix ("App.") 176. LaFiandra sought and received a short-term disability accommodation reducing her client billing requirement by half and allowing her to work on a part-time schedule, attend twice-weekly therapy appointments, and take breaks as needed. In January 2017,

---

[1] At the time, Accenture was called Andersen Consulting.

LaFiandra's doctor approved her return to full-time work, on the condition that she not spend more than five to six hours per day in front of a computer screen. LaFiandra thereafter requested an accommodation limiting her screen time to five or six hours per day and maintaining her reduced billing requirement.

The person responsible for evaluating LaFiandra's performance and approving any requested accommodations was Francis Hintermann, a "Global Managing Director" at Accenture. App. 318. Hintermann "partially denied" LaFiandra's accommodation request. App. 381. In particular, he approved the request only to the extent that "there is a timeline and an end to it in the foreseeable future." Id. Hintermann stated, in addition: "It cannot be permanent . . . ." Id. Accenture approved LaFiandra's requested accommodation in February of 2017 but indicated that the accommodation would expire on April 30, 2017.

In early April 2017, a human resources representative asked Hintermann by email how LaFiandra's accommodation "has . . . been going." App. 623. Hintermann replied, in part:

> The fact she takes pauses away from her computer from time to time is not exceptional, as long as it is not mentioned in some type of specific rigid medical arrangement. It will help to get that confirmed[.]

Id. Notwithstanding Hintermann's comment and the anticipated expiration of the accommodation on April 30, 2017, the arrangement appears to have remained in place without any additional documented approvals until May 1, 2018, when LaFiandra

3

submitted a second formal accommodation request. [2] Under the terms of this requested accommodation, LaFiandra sought to work 30 hours per week and a maximum of five or six hours daily in front of a computer screen.

Accenture's human resources department notified Hintermann of LaFiandra's request and asked him to "provide a response and approval with regards to your ability to meet th[e] accommodation." App. 690. Hintermann replied by email that he had "concerns that [he] would like to discuss with" a human resources employee. Id. LaFiandra appears to have received the requested accommodation despite Hintermann's concerns.

In November 2019, at the recommendation of the human resources department, LaFiandra applied for intermittent leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"), in order "to protect [her] job." App. 183. When notified of LaFiandra's request, Hintermann wrote to a human resources representative: "It seems to be a never ending story: anything I can do?" App. 627. The human resources representative responded, in part: "As long as the documentation supports this, then there is not much we can do. . . ." App. 625. Hintermann replied: "Thank you for the clarification. Regarding Lynn's long term future, it is a completely different discussion that I will address with you through a different stream." Id. Hintermann then wrote in a separate email to the human resources representative:

---

[2] The parties do not explain, and the record does not disclose, what formal approval, if any, governed the accommodation arrangement between April 30, 2017, when LaFiandra's first formal accommodation was supposed to expire, and May 1, 2018, when LaFiandra submitted the second accommodation request.

I will need your advice about how to talk about her future with Lynn at some point: I understand she likes her job and that she is doing an OK job right now but we have to keep evolving as a team and her area is the only area where I cannot do much in the US. What can we do to prepare the future?

App. 677.

In a telephone call on September 10, 2020, Hintermann informed LaFiandra that her "role will cease to exist" and that her employment at Accenture would be terminated. App. 455. LaFiandra's notes of the conversation indicate that Hintermann told her: "I want it to be crystal clear [that] it is not related to performance . . . . It[']s not related to your own performance." App. 456. However, Hintermann later claimed that LaFiandra was discharged because she "was selected to be in the bottom 5% of employees globally," App. 194, based, in particular, on "recurring challenges with the way she collaborates," App. 696. According to Hintermann, he "decided to communicate the separation as a role elimination" because he wished to "soften the blow somewhat of being selected for separation." App. 195.

LaFiandra filed suit against Accenture, Hintermann, and Barbara Harvey, who preceded Hintermann as LaFiandra's supervisor. The District Court granted Hintermann and Harvey's motion to dismiss. Accenture filed a post-discovery motion for summary judgment, which the District Court granted. LaFiandra timely appealed the court's grant of summary judgment in Accenture's favor.

5

## II.[3]

We review a grant of summary judgment de novo, applying "the same standard as the District Court." Hayes v. N.J. Dep't of Hum. Servs., 108 F.4th 219, 221 (3d Cir. 2024). A court may award summary judgment only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Id. A fact is material if it could "affect the outcome of the suit." Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024). And a dispute is genuine if a reasonable factfinder could resolve the dispute in favor of the nonmovant. Id. When reviewing the summary judgment record, we must credit the evidence of the nonmovant and draw all reasonable inferences in her favor. Peifer v. Bd. of Prob. & Parole, 106 F.4th 270, 275 (3d Cir. 2024).

## III.

The method of proof announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), allows a plaintiff alleging retaliation in violation of the ADA or age discrimination in violation of the ADEA to meet her burden of production — and, therefore, avoid summary judgment — without providing direct evidence of discriminatory animus. See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022); Burton v. Teleflex Inc., 707 F.3d 417, 425–26 (3d Cir. 2013). Under McDonnell Douglas, an employee alleging retaliation must produce evidence that (1) the employee engaged in protected activity; (2) the employee was subject to adverse action

---

[3] The District Court had jurisdiction of the suit under 28 U.S.C. § 1331. Our Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

by the employer after or contemporaneous with her protected activity; and (3) the adverse action was causally connected with the employee's protected activity. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003). An employee alleging age discrimination under the ADEA must produce evidence that (1) she is at least 40 years of age; (2) was subject to an adverse employment action; (3) was qualified for the position she occupied; and (4) "was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Burton, 707 F.3d at 426.

If the plaintiff meets this initial burden of production and thus establishes a prima facie case of retaliation or age discrimination, the employer must produce evidence of a legitimate and non-retaliatory reason for the adverse action. Canada, 49 F.4th at 346. The burden of production then returns to the employee, who must show that the employer's "proffered reason [for the employee's termination] is merely pretext for intentional discrimination." Qin v. Vertex, Inc., 100 F.4th 458, 474 (3d Cir. 2024) (quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)). To show pretext, the employee must produce "'some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. at 474–75 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The District Court granted summary judgment with respect to LaFiandra's disability retaliation claim on two grounds. The court concluded, first, that LaFiandra did not establish a prima facie case of retaliation. And the court determined, second, that

7

LaFiandra did not produce sufficient evidence that Accenture's proffered reason for her termination was a pretext for intentional discrimination. The District Court also granted summary judgment for Accenture with respect to LaFiandra's age discrimination claim. Although the court acknowledged that LaFiandra established a prima facie claim of age discrimination, the court granted summary judgment with respect to her discrimination claim based on its earlier conclusion that LaFiandra failed to produce sufficient evidence of pretext. Our review of the record, however, leads us to disagree with the District Court's conclusions regarding LaFiandra's disability retaliation and age discrimination claims.

1.

The District Court concluded that LaFiandra did not establish a prima facie case of retaliation because she failed to produce evidence that her termination was causally connected to her disability accommodations. The court reasoned that LaFiandra's termination in September of 2020 was "insufficiently proximate" to her request for FMLA leave "to support an inference that the termination occurred because of the accommodation." App. 9. And the court determined that Hintermann's seeming frustration after learning of LaFiandra's request under FMLA — "It seems to be a never ending story: anything I can do?" — could not support a reasonable inference of causation because LaFiandra "remained employed at Accenture for . . . ten months" after her request. App. 627 (Hintermann comment); App. 10 (conclusion of District Court).

The District Court erred by treating evidence of temporal proximity as a necessary condition of a prima facie causation showing. We have "emphasize[d] that it is

8

causation, not temporal proximity itself, that is an element of [a] plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997). We have recognized, therefore, that "the absence of immediacy between the cause and effect does not disprove causation." Id. A court assessing the sufficiency of a plaintiff's causation showing must consider "the proffered evidence . . . as a whole." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (quoting Kachmar, 109 F.3d at 177). So, "[a]lthough timing and ongoing antagonism have often been the basis for the causal link," we have recognized that a plaintiff may "substantiate a causal connection . . . through other types of circumstantial evidence." Id. at 280–81.

A reasonable factfinder considering the evidence as a whole could conclude that LaFiandra's discharge was causally connected to her requests for and receipt of disability accommodations. The record indicates that Hintermann, the person responsible for deciding to terminate LaFiandra's employment, consistently disfavored her accommodation requests. See App. 381 (approving initial accommodation in January of 2017 but stating "[i]t cannot be permanent" and requesting "an end to it in the foreseeable future"); App. 623 (requesting in April of 2017 that LaFiandra's work restrictions "not [be] mentioned in some type of specific rigid medical arrangement"); App. 624 (stating in May of 2018 that he had "concerns" regarding a requested extension). And the record suggests that Hintermann responded to LaFiandra's FMLA request in November of 2019 by planning her eventual discharge. See App. 627 (stating, after learning of LaFiandra's request for FMLA protection in November 2019, "It seems to be a never ending story:

9

anything I can do?"); App. 677 (several weeks after LaFiandra's FMLA request, asking what could be done "to prepare [her] future").

This evidence of a "pattern of antagonism" may by itself suffice to satisfy the causal element of LaFiandra's prima facie case of retaliation. Farrell, 206 F.3d at 281. But we need not rest our assessment on Hintermann's antagonism alone. We have recognized that an inference of causation may be appropriate when an "employer [has given] inconsistent reasons for terminating the employee." Id. This principle squarely applies here. Hintermann at first assured LaFiandra that her discharge was unrelated to her performance, but he later maintained the opposite. This inconsistency, in combination with Hintermann's repeatedly expressed disfavor for LaFiandra's requested accommodations, suffices to establish the causation element of LaFiandra's prima facie case of disability retaliation.[4]

## 2.

The District Court also concluded that LaFiandra did not meet her burden of producing evidence that Accenture's proffered reasons for her discharge were pretextual. We disagree. The inconsistency of Accenture's proffered explanations for LaFiandra's termination is probative of pretext. See Fuentes, 32 F.3d at 765. And other evidence in

---

[4] Because the court concluded that LaFiandra established a prima facie case of age discrimination, the court's conclusion as to pretext was the sole basis for its grant of summary judgment with respect to the age discrimination claim. Accenture defends the court's conclusion regarding pretext but does not argue that we should affirm the District Court's judgment on the basis that LaFiandra failed to establish a prima facie case of age discrimination. We therefore express no opinion on the sufficiency of LaFiandra's prima facie case of age discrimination.

the record independently tends to discredit Accenture's claim that LaFiandra was discharged for poor work performance. In performance reviews dated June and July of 2020 — just months before LaFiandra's discharge — LaFiandra's reviewers commented, inter alia, that LaFiandra "hit it out of the park on [a] project," App. 63; that she "continues to perform beyond expectations," App. 65; that "[s]he has a natural ability to improvise and adapt to change," App. 67; that she produced "a high quality outcome," App. 68; and that she "truly stand[s] in a class all [her] own," App. 70.

These reviewers also provided comments that are facially inconsistent with Hintermann's claim that there were "recurring challenges with the way [LaFiandra] collaborates." App. 696. One colleague praised LaFiandra's "high level of collaboration," App. 65, and observed that a "strength is her ability to work with her colleagues" in another department, App. 66. Another colleague thanked LaFiandra for her "terrific collaboration," App. 64, and noted that LaFiandra had successfully "marshalled a high-performing team of data scientists from Accenture Research." App. 63. A third colleague wrote that LaFiandra "did a great job at collaborating with business leaders across Accenture Strategy and Applied Intelligence . . . ." App. 69. And a fourth colleague praised LaFiandra as "a leader, a facilitator and a collaborator." App. 73.

Given the inconsistency of Accenture's proffered reasons for LaFiandra's termination and the seeming implausibility of the performance-related explanation Accenture now espouses, a reasonable factfinder could conclude that Accenture's proffered reasons were a pretext for disability retaliation or age discrimination. See Qin, 100 F.4th at 474; Fuentes, 32 F.3d at 765 (noting that implausibility is probative of

11

pretext).

## IV.

Because there are genuine disputes of material fact concerning LaFiandra's claims of disability retaliation and age discrimination, we must reverse the District Court's grant of summary judgment with respect to those claims. Nevertheless, we do not see cause to disturb the District Court's judgment insofar as it denied LaFiandra's motion to strike four affidavits submitted by Accenture in support of its motion for summary judgment. See App. 164–67 (declaration of Kathryn Hale, Employee Relations Senior Manager at Accenture); App. 193–97 (declaration of Hintermann); App. 201–04 (declaration of Barbara Harvey, former Managing Director at Accenture); and App. 222–25 (declaration of Holly Tracy, Employee Relations Manager). LaFiandra argues that the affidavits are "shams" because they contradict the declarants' prior deposition testimony. LaFiandra Br. 32–37. We review the District Court's denial of LaFiandra's motion to strike the affidavits for abuse of discretion. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 209 (3d Cir. 2022).

Under the sham affidavit doctrine, "a party may not create a [genuine] issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007) (quotation marks omitted). LaFiandra's invocation of the doctrine is inapt because Accenture submitted the affidavits in an attempt to win summary judgment, not defeat it. The District Court did not abuse its discretion in declining to strike the affidavits as shams.

12

V.

For the foregoing reasons, we will reverse the District Court's grant of summary judgment in Accenture's favor with respect to LaFiandra's claims of disability retaliation and age discrimination. But we will affirm the District Court's judgment insofar as it denied LaFiandra's motion to strike. The case shall be remanded to the District Court for further proceedings consistent with this Opinion.