**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1017
_____

JAMES CARLO QUISENBERRY
Appellant

v.

JON T. RIDGE, Washington County Chief Probation and Parole Officer; KATHERINE
B. EMERY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:20-cv-01824)
District Judge:  Honorable J. Nicholas Ranjan
_____

Argued:  September 11, 2024
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, ROTH and RENDELL, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 15, 2025)

Wayne A. Ely [ARGUED]
59 Andrea Drive
Richboro, PA 18954

<u>Counsel for Appellant</u>

Sarah E. Cobbs [ARGUED]
Walsh Barnes
2100 Corporate Drive, Suite 300
Wexford, PA 15090

<u>Counsel for Appellee</u>

_____

OPINION[*]
_____

CHAGARES, <u>Chief</u> <u>Judge</u>.

On August 10, 2019, Jon T. Ridge, the Chief Adult Probation and Parole Officer for Washington County, Pennsylvania, directed local police to arrest James Carlo Quisenberry on the authority of an arrest warrant that had been signed by a judge several months earlier. Quisenberry filed suit against Ridge and the judge who signed the warrant pursuant to 42 U.S.C. § 1983, alleging that the issuance of the pre-signed warrant violated the Fourth Amendment. The District Court granted summary judgment to Ridge on the basis of quasi-judicial immunity, and Quisenberry appealed. Because we agree that Ridge is entitled to quasi-judicial immunity with respect to claims arising from the issuance of the warrant, we will affirm the judgment of the District Court.

I.

We write for the benefit of the parties and so recite only the facts pertinent to our decision. In 2017 or 2018, after the murder of two domestic violence victims, Judge Katherine Emery, then the President Judge of the Washington County Court of Common Pleas, devised a procedure for the prompt arrest, in an "emergency . . . situation," of persons on pretrial release charged with domestic violence. Appendix ("App.") 134. Those subject to the emergency process were called "Tier 3" offenders. As part of the

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

emergency arrest procedure, Judge Emery signed arrest warrants specific to each offender "in the Tier 3 level, only to be used if needed." App. 135. Once signed, the warrants were placed in a "probation office special file in a special drawer that only would be accessed if [a] problem had arisen." App. 134.

On March 18, 2019, a detective in the Cecil Township Police Department filed a criminal complaint against Quisenberry alleging that he had used anonymous phone calls to stalk, harass, and threaten his former romantic partner, Judge Valarie Costanzo of the Court of Common Pleas of Washington County, Pennsylvania. The Affidavit of Probable Cause supporting the criminal complaint alleged, inter alia, that Quisenberry had "left a message threatening to cut out [Judge Costanzo's] tongue and kill her." App. 211. Because Quisenberry's alleged offenses involved a judge of Washington County, his case was assigned to Judge Gerald Solomon, a senior judge visiting from Fayette County.

Quisenberry was released on bond. As a condition of release, he agreed not to enter certain designated "exclusion zones." One "exclusion zone" consisted of the area within a two-mile radius of Judge Costanzo's house. To ensure compliance, Quisenberry was required to wear an electronic monitoring device called the "Buddi Clip." The Buddi Clip was designed to alert Judge Costanzo if Quisenberry entered the exclusion zone around her house.

On August 10, 2019, Judge Costanzo was alerted that Quisenberry had entered the exclusion zone around her house. Judge Costanzo then notified Ridge of the breach. Ridge, in turn, obtained confirmation from a subordinate that Quisenberry had breached the exclusion zone. At the time Ridge learned of the breach, he "was in the middle of

3

DJ'ing a wedding" at which Judge Emery happened to be a guest. App. 184. After learning from Ridge that Quisenberry had breached an exclusion zone, Judge Emery directed Ridge to call Judge Solomon.

Ridge and Karen Lebar, the Assistant Chief of the probation office and also a guest at the wedding, called Judge Solomon and informed him that Quisenberry had breached an exclusion zone. Judge Solomon initially "advised [Ridge] to see if he could make contact with a judge" in Washington County "to get a bench warrant signed . . . ." App. 222. But, as Judge Solomon recalled during his deposition, either Ridge or Lebar "informed [him] that there were already bench warrants signed by the presiding judge and that [it] was their practice and procedure in Washington County to have these forms available for such circumstances as we now face." App. 222. After learning of the pre-signed warrant procedure, Judge Solomon told Ridge, "if that's your practice in Washington County and you have a bench warrant, then you should act upon it." App. 227.

Ridge thereafter directed a subordinate to fax the pre-signed warrant for Quisenberry's arrest to the Peters Township Police Department. Multiple officers of the Peters Township Police Department executed the warrant on the evening of August 10, 2019.

Quisenberry filed suit against Ridge and Judge Emery in the United States District Court for the Western District of Pennsylvania. The District Court granted Judge Emery's motion to dismiss on the basis of judicial immunity. Ridge later filed a post-discovery motion for summary judgment, which the District Court granted on the basis of

4

quasi-judicial immunity.  Quisenberry timely filed a notice of appeal.

## II.

The District Court had jurisdiction of the suit under 28 U.S.C. § 1331.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.  "We review a grant of summary judgment de novo, using the same standard as the District Court."  Hayes v. N.J. Dep't of Hum. Servs., 108 F.4th 219, 221 (3d Cir. 2024).  "Summary judgment is appropriate only 'if, when viewed in the light most favorable to the [nonmoving party], there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'"  Id. (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580 (3d Cir. 2003)) (alteration in Hayes).  "A fact is material if its resolution might affect the outcome of the suit under the governing law."  Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (citations and internal quotation marks omitted).  "And a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. (citations and internal quotation marks omitted).  In deciding whether there is a genuine dispute of material fact, we must credit the evidence of the nonmovant and draw all reasonable inferences in her favor.  Peifer v. Bd. of Prob. and Parole, 106 F.4th 270, 275 (3d Cir. 2024).

## III.

It is well established that judges enjoy absolute immunity with respect to claims arising from their official acts.  See Russell v. Richardson, 905 F.3d 239, 247 (3d Cir. 2018).  As our Court has explained, "[t]he adjudicative function that judges perform requires that they be immune from suit for damages, for if judges were personally liable

5

for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." Trinh v. Fineman, 9 F.4th 235, 238 (3d Cir. 2021) (cleaned up).

We have recognized that "[t]he fair administration of justice depends not only judges," but also on those who assist them. Russell, 905 F.3d at 247. As a result, "so-called 'quasi-judicial' immunity has been extended over time to protect a range of [quasi-]judicial actors, including . . . those who serve as arms of the court, fulfilling a quasi-judicial role at the court's request . . . ." Id. (citations omitted and cleaned up). In Lockhart v. Hoenstine, 411 F.2d 455 (3d Cir. 1969), this Court extended absolute immunity to a prothonotary who refused to file a defendant's appeal papers, "because his refusal was 'at the direction of the court,' and 'any public official acting pursuant to court directive is . . . immune from suit.'" Russell, 905 F.3d at 248 (quoting Lockhart, 411 F.2d at 460). In Waits v. McGowan, 516 F.2d 203 (3d Cir. 1975), we "granted immunity to an investigator for the public defender for 'act[ing] under orders of the . . . court' to help extradite the plaintiff for prosecution . . . ." Russell, 905 F.3d at 248–49 (quoting Waits, 516 F.2d at 205) (alteration in Russell). And in Russell, we made clear that an official enjoys immunity with respect to claims arising from "actions actually authorized by court order." 905 F.3d at 248.

Quisenberry himself acknowledges that "[q]uasi-judicial immunity applies when a defendant 'act[s] pursuant to a court directive.'" See Reply. Br. 3 (quoting Stankowski v. Farley, 251 F. App'x 743, 746 (3d Cir. 2007)). Nevertheless, Quisenberry insists that the

6

record evidences a genuine dispute as to whether Judge Solomon authorized Ridge to issue the arrest warrant.

We are not persuaded. At his deposition, Ridge testified that "Judge Solomon said to have Mr. Quisenberry picked up." App. 164. Judge Solomon's own statements regarding his conversation with Ridge corroborate Ridge's account. During his deposition, Judge Solomon testified that he told Ridge, "if [it's] your practice in Washington County [to use pre-signed warrants] and you have a bench warrant, then you should act upon it." App. 227. A statement made by Judge Solomon during Quisenberry's bond revocation hearing on August 15, 2019, is to the same effect:

> I was told that there was a presigned warrant by Judge Emery. The question to me was, "Should it be issued?" I said, "Did he violate the terms?" They said that he did, so I directed that the warrant be issued.

App. 602.

Quisenberry seizes on some of Judge Solomon's other deposition testimony as evidence of a genuine dispute. In particular, Quisenberry observes that when Judge Solomon was asked, "So you did not give them [Ridge] permission to arrest Mr. Quisenberry?", he responded: "I did not. It was not my warrant." App. 225; see also App. 222 (when asked, "So you did not issue a warrant yourself obviously; right?", stating, "I did not."). Quisenberry also notes that Judge Solomon denied "mak[ing] any determination of probable cause" during his phone call with Ridge. App. 225. And, citing Judge Solomon's testimony that he "advised [Ridge] to . . . make contact with a judge over there to get a bench warrant signed," Quisenberry argues that Judge Solomon's only instruction to Ridge was that he should obtain a warrant from another

7

judge. App. 222.

In context, however, these statements fail to establish that there is a genuine dispute of material fact. First, Judge Solomon's statement that he "did not give [Ridge] permission to arrest" Quisenberry amounts to a denial that Judge Solomon signed the warrant—not a denial that Judge Solomon directed Ridge to act according to a warrant signed by another judge. Indeed, immediately after responding affirmatively to counsel's question, "So you did not give them [Ridge] permission to arrest Mr. Quisenberry?", Judge Solomon said by way of clarification: "It was not my warrant." App. 225. So, although Judge Solomon made clear that he did not sign the warrant, he did not contradict his testimony elsewhere that he directed Ridge to "act upon" on the warrant signed by Judge Emery.

Second, Judge Solomon's denial that he made any finding of probable cause is not inconsistent with his testimony that he instructed Ridge to "act upon" a pre-existing warrant. Judge Solomon's denial that he made a finding of probable cause at most establishes that, although he directed Ridge to "act upon" a pre-existing warrant, he did so without making a determination of probable cause. But the relevant question in assessing Ridge's entitlement to quasi-judicial immunity is whether Ridge acted according to a judicial directive—not whether that directive was proper as a matter of law.

Third, Judge Solomon's statement that he advised Ridge to obtain a bench warrant must be understood in light of Judge Solomon's subsequent testimony that he was "informed [by Ridge] that there were already bench warrants signed by the presiding

8

judge and that [it] was their practice and procedure in Washington County to have these forms available for such circumstances as we now face." App. 222. Indeed, Judge Solomon testified that, once informed of the availability of the pre-signed warrants, he told Ridge: "[I]f that's your practice in Washington County and you have a bench warrant, then you should act upon it." App. 227. No reasonable factfinder could conclude that Judge Solomon's telling Ridge to obtain a bench warrant from another judge was the last word in their conversation.

In sum, we conclude that there is no genuine dispute that Ridge issued the warrant for Quisenberry's arrest according to Judge Solomon's directive. Ridge is therefore entitled to quasi-judicial immunity with respect to claims arising from the issuance of the warrant.

IV.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of Ridge.