# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1698

MAURICE BOSTON,
Appellant

v.

GRAPHIC PACKAGING INTERNATIONAL, LLC

_____

On Appeal from the U.S. District Court, E.D. Pa.
Judge John R. Padova, No. 2:22-cv-03473

Before: SHWARTZ, BIBAS, and PHIPPS, *Circuit Judges*
Submitted: Mar. 3, 2026; Filed: Mar. 20, 2026

_____

NONPRECEDENTIAL OPINION[*]

BIBAS, *Circuit Judge*. Maurice Boston, a black man, worked at Graphic Packaging's factory near Valley Forge, Pennsylvania. Usually, he worked the night shift. A few times in 2019, when he worked days, the day-shift supervisor gave him warnings or berated him. Boston filed grievances about these warnings, but neither the warnings nor the grievances alluded to race.

In the spring of 2020, day-shift employee William Dennis was talking to a coworker about Boston and used the n-word to describe him. Though Boston was not there, he heard about it later. After Boston complained, Dennis was suspended and within a week fired.

[*]This is not an opinion of the full Court and, under 3d Cir. IOP 5.7, is not binding precedent.

Graphic Packaging has an attendance policy; under it, employees who rack up nine points may be fired. By May 29, 2021, Boston had accumulated ten-and-a-half points. Five days later, Graphic Packaging fired him, citing that policy.

Boston sued Graphic Packaging under Title VII and 42 U.S.C. § 1981. He claimed that Boston had treated him worse and ultimately fired him because of his race, forced him to endure a racially hostile work environment, and retaliated against him for complaining about discrimination. The District Court granted Graphic Packaging summary judgment. Reviewing de novo, we will affirm. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

First, Boston's disparate-treatment claim fails. He alleges that four categories of actions harmed him. The first two falter out of the gate. Boston complains that he was transferred and then written up for underperforming at his new stations. An adverse employment action need not cause significant harm, but it must still cause *some* harm. *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 354–55 (2024). Boston successfully challenged certain write-ups; even when he was unsuccessful, he does not show how the disciplinary actions harmed him in any way. The ordinary discipline process does not harm "a term or condition of employment." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024). Just the opposite: Compliance with workplace rules is a condition of employment. *Cf. Jeannette Corp. v. NLRB*, 532 F.2d 916, 918 (3d Cir. 1976) ("Rules governing the conduct of employees on company time and property are often necessary and an employer has a right to maintain them."). And Boston's transfer to a different machine was neither disciplinary nor harmful to his career.

The same reasoning defeats the various write-ups for what Boston described as "small things" that "weren't big deals," as Boston does not dispute that Graphic Packaging was enforcing its valid rules or explain how he was left worse off. JA 292. Besides, the evidence Boston points to in the record does not let a reasonable factfinder "infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

Only two adverse actions harmed him. One was being suspended for two days without pay after repeatedly parking in restricted spots. The other was being fired after accumulating more than nine points for absences and lateness. For both, Graphic Packaging gave race-neutral explanations.

Thus, the burden shifted to Boston to show that Graphic Packaging's explanations were pretexts for race discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973). He has not done so. Boston does not dispute that, each time he earned attendance points, he was in fact absent or late. Though he mentions the lack of minority managers and one coworker's use of the n-word (and getting fired for it), those prove nothing about why he was fired, given that he was in fact repeatedly absent or late. Boston also points to other employees who got leniency on their attendance points, but not all of their races were different than his. So nothing about that occasional leniency suggests that racism was even one motive at work in his firing. And though Boston took videos of two cars parked in the handicapped spot, he offered no evidence about who was parked there, what their races were, whether they refused to move when asked, and whether they were punished. Because

3

he has not shown pretext, the District Court properly granted summary judgment on his disparate-treatment claims.

Second, Boston has not shown a hostile work environment either. To rise to the level of discrimination, he must show that any harassment was so severe or pervasive as to alter the terms and conditions of his employment. *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). But his only clearly racial anecdote is about a worker on a different shift who used the n-word in speaking to other employees and was promptly fired for it. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 110 (3d Cir. 2009) (holding that an adequate response to complaint to prevent further harassment supports summary judgment for the employer). He also notes that someone had scratched a swastika into a bathroom wall, but it was beneath a curse directed at Graphic Packaging, not any minority group. Boston never complained about it, nor is there any evidence that anyone else did. So Graphic Packaging cannot be liable for its existence. *See id.* at 107. Plus, one-and-a-half incidents are hardly pervasive. And the only time that we have held the n-word to be sufficiently severe on its own, it was uttered by a supervisor, in front of the minority workers, and accompanied by threats of firing. *Castleberry*, 863 F.3d at 264–66. These facts are far from those.

Finally, Boston's retaliation claims fail too. His two reports of race discrimination came more than a year before he was suspended and fired, so nothing about the timing suggests retaliation against protected activity. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (holding that a three-month gap, "without more, cannot create an inference of causation"). He also does not provide enough evidence of a "pattern of

4

antagonism" that would let a reasonable jury link his reports to his transfer, suspension, or firing. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920–21 (3d Cir. 1997). And a comment by a human-resources staffer that Boston "enjoyed filing grievances" was not about his protected activity, because his formal grievances were not about race. JA 650. That employee was not aware that Boston had previously alleged racial discrimination. We will thus affirm.